## 59774. JACK V. HEARD CONTRACTORS, INC. v. A. L. ADAMS CONSTRUCTION COMPANY.

QUILLIAN, Presiding Judge.

Jack V. Heard Contractors (hereinafter Heard), defendant below, appeals from the grant of a motion for partial summary judgment of the plaintiff — A. L. Adams Construction Company (hereinafter Adams), and the denial of its motion for summary judgment. *Held:*

1. The trial court granted plaintiff Adams' motion for partial summary judgment that its contract with the defendant was a valid contract. This was not a final judgment and leaves the action pending below but is directly appealable under Code Ann. § 81A-156 (h) without a certificate of immediate review under Code Ann. § 6-701 (a) 2 (A).

2. Defendant's motion for partial summary judgment—which was denied, was appealed without a certificate for immediate review. The Supreme Court has held in a situation in which a grant of a partial summary judgment was appealed with a denial of a summary judgment that "the judgment granting partial summary judgment was appealable, but the judgment denying summary judgment was reviewable only by certificate of immediate review . . ." *Thomas v. McGee,* 242 Ga. 441 (1) (249 SE2d 242).

*Executive Jet Sales v. Jet America,* 242 Ga. 307 (248 SE2d 676), and *Marathon &c. Realties v. Kalb,* 244 Ga. 390 (260 SE2d 85), are distinguishable from the instant case. Although *Executive Jet* involved a denial of a motion to dismiss, and *Marathon* involved a denial of a motion for summary judgment — *Marathon* reversed *Marietta Yamaha v. Thomas,* 237 Ga. 840 (229 SE2d 753) — another denial of a motion for summary judgment issue, "based upon what [the Supreme] court held in *Executive Jet* . . ." 244 Ga. at 393. When *Executive Jet* and *Marathon* are construed in tandem they permit denial of a motion for summary judgment to be considered on appeal without a certificate for immediate review as both were cross appeals (as was *Marietta Yamaha),* and *Executive Jet* was specifically predicated upon that factual base as the court held that an *appellee* "may institute cross appeal . . . and . . . present for adjudication on the cross-appeal all errors or rulings adversely affecting him, and in no case shall the appellee be required to institute an independent appeal on his own right . . ." *Executive Jet Sales v. Jet America,* 242 Ga. 307-308, supra. That decision was further bottomed upon the reasoning that where the appeal of *an appellant* "is taken under any provision of paragraph (a) [of Code Ann. § 6-701] above, all judgments, rulings or orders rendered in the case which are raised on appeal, and which may affect the proceedings below, shall be reviewed and determined by the appellate court, without regard to the appealability of such judgment, ruling or order standing alone . . ." 242 Ga. at 308.

Accordingly, as the grant of the plaintiff's motion for partial summary judgment in the instant case was not a cross appeal, but was appealable only under Code Ann. § 81A-156 (h) and not Code Ann. § 6-701 (a), *Executive Jet* and *Marathon* are inapposite, and *Thomas v. McGee,* 242 Ga. 441, supra, controls. The denial of the defendant's motion for summary judgment cannot be considered without a certificate for immediate review and application to this court for permission to appeal. Therefore, the denial of defendant's motion for summary judgment is not properly before us for review.

3. The defendant contends the trial court's grant of plaintiff's partial motion for summary judgment was error. We do not agree.

a. Adams was the prime contractor for the construction of a building in Aiken, South Carolina — the "Croft-House." Char-Don, Inc. executed a contract with Adams which provided for the painting and wallcovering of the building. Thereafter, Char-Don transferred and assigned its rights under the contract to Heard — the defendant and appellant herein. Heard painted approximately one-half of the interior of the building before a controversy arose as to whether the contract required Heard to paint the exterior as well as the interior. Heard "took the position that there was no binding contract between the parties because there had been no meeting of minds, and further insisted that it would proceed no further with the painting of this project until such time as the parties entered into a valid and binding contract . . . ." Adams refused Heard's request and hired another subcontractor to finish the painting. Adams filed this action anticipating it would suffer damages. However, after paying the new subcontractor for its work, it remitted the unexpended sum of the total contract price to Heard — $4,000. Heard filed an answer and counterclaim for $17,945 — claimed to be due and owing for the work it accomplished prior to leaving the job.

The contract signed by Char-Don and assigned to Heard provided for the "Painting [and] Wallcovering" of Croft House, including "painting and vinyl wallcovering as detailed on the plans and in accordance with Sections . . . 09900 . . . of the specifications." Under the Specifications, "Section 09900—Painting. . .," Subsection 3.06 required: "Exterior Paint Schedule: A. FERROUS METAL (NEW): 1. Doors and Frames: [1 or 2 coats] B. FERROUS METAL (PREVIOUSLY PAINTED): [touch up or 1 coat]. C. GALVANIZED METAL: 1. Wearing Surfaces: [1 or 2 coats]. 2. Non-Wearing Surfaces [1 or 2 coats]: D. ALUMINUM: [1 or 2 coats]. E. STUCCO: 2 coats. F. CONCRETE MASONRY [see section 09800]."

Construing the provisions in the contract for "painting" in pari materia with the provisions in the "specifications," under Section 09900 "Painting," it was established that there was a requirement for "New surfaces to be painted" which included all "wood, drywall, concrete, concrete block, and stucco." Further, the "exterior paint schedule" required "1 to 2 coats" of paint on exterior surfaces whose composition was "ferrous metal, galvanized metal, aluminum, stucco [and] concrete masonry."

Accordingly, we disagree with defendant's argument that "[t]he dispute in this case deals with whether the exterior stucco walls of the project were to be painted." This appeal, in accordance with defendant's amended "Notice of Appeal" and "Enumeration of Error," deals first with the grant of plaintiff's motion for partial summary judgment that there was a valid contract, and secondly, at

issue is whether *any* exterior painting was required — not whether "exterior stucco walls of the project were to be painted." If *any* exterior painting was required by the contract, defendant's argument that exterior stucco was not required to be painted misses the crucial issue — e.g. whether *interior* painting *only* was required or interior *and* exterior surfaces *both* were to be painted.

b. Defendant contends "there was a justifiable failure of the minds of the parties to meet on the question of the exterior painting, or at the least, there exists genuine issues of material fact about whether their minds met, and therefore it was error to grant appellee's motion for partial summary judgment, ruling that the contract between the parties was valid." We disagree.

It is essential to the validity of a contract that the minds of the contracting parties meet on the same subject matter, at the same time, and in the same sense. *Ga. Sou. &c. R. Co. v. Adeeb,* 15 Ga. App. 831 (1) (84 SE 323); *Fonda Corp. v. Sou. Sprinkler,* 144 Ga. App. 287, 291 (241 SE2d 256). The contract must be sufficiently definite to show agreement as to subject matter before an action can be maintained. *Jones v. Ely,* 95 Ga. App. 4 (1) (96 SE2d 536). However, "[i]t is the duty of contracting parties to inform themselves with reference to the subject-matter about which they desire to contract. The courts cannot do this for them." *Prince v. Friedman,* 202 Ga. 136, 140 (42 SE2d 434). " '[A] mere lack of clarity on casual reading is not the criterion for determining whether a contract is afflicted with ambiguity . . . Nor is a contract ambiguous within that sense merely because it may be even difficult to construe.' " *General Gas Corp. v. Carn,* 103 Ga. App. 542, 546 (120 SE2d 156). However, "[t]here is no construction required or even permissible when the language employed by the parties in the contract is plain, unambiguous, and capable of only one reasonable interpretation." *Pisano v. Security Management Co.,* 148 Ga. App. 567, 568 (251 SE2d 798).

Moreover, " '[t]he law leans against the destruction of contracts on the ground of uncertainty, and a contract will not be declared void on that ground unless, after reading it and interpreting it in the light of the circumstances under which it was made and supplying or rejecting words necessary to carry into effect the reasonable intention of the parties, their intention cannot be fairly collected and effectuated' . . ." *Milton Frank Allen Publications v. Georgia &c. Retailers,* 219 Ga. 665, 672 (135 SE2d 330). "Nor is it necessary that a contract shall state definitely and specifically all facts in detail to which the parties may be agreeing, but as to such matters it will be sufficiently definite and certain if it contains matter which will enable the courts, under proper rules of construction, to ascertain the

terms and conditions on which the parties intended to bind themselves." *Dorsey v. Clements,* 202 Ga. 820, 824 (44 SE2d 783).

Using the foregoing criteria, we find no ambiguity, uncertainty, or conflict in the instant contract. Defendant argues that because paragraph 2.10 of Section 09100 — dealing with "Lath and Plaster," requires "integral coloring" in "Finishcoat Materials"— which would include stucco, there would be no need to paint the stucco if the color was to be included in the basic composition.

Assuming that Section 09100 deals with exterior as well as interior materials, and that "finishcoat materials" includes "stucco," this would require that stucco include "integral coloring." However, such a requirement does not conflict with Section 09900 which deals only with "painting" — exterior *and* interior surfaces, and requires all exterior stucco to be painted with two coats. Thus, assuming arguendo that 09100 requires stucco to include "integral coloring," this only establishes that the subcontractor who prepares and installs the stucco would include "integral coloring" and would not conflict with or relieve the defendant — a different subcontractor, from the clear requisite of "Section 09900 — *PAINTING* . . . 3.05 . . . C. NEW SURFACES TO BE PAINTED . . . 3. Concrete, Concrete Block and Block and Stucco . . . 3.06 — *EXTERIOR PAINT SCHEDULE:* A. Ferrous Metal (New) [1 or 2 coats]; B. Ferrous Metal (Previously Painted) [touch up or 1 coat]; C. Galvanized Metal [1 or 2 coats]; D. Aluminum [1 or 2 coats]; E. *Stucco: 2 coats Exterior Vinyl Masonry Paint;* F. Concrete Masonry [see section 09800]." (Emphasis supplied). If a prime contractor wants to include "integral coloring" in the basic composition of stucco and then paint it again, this would not establish a conflict nor do we find it to establish an ambiguity.

Although defendant argues only that he was not to comply with the manifest requirement of the painting section as to exterior stucco because of his interpretation of a section dealing with "finishcoat materials," he does not address the issue of how to deal with the remaining requirement of Section 09900 to paint *exterior* "Ferrous Metal (New) . . . Ferrous Metal (Previously Painted) . . . Galvanized Metal . . . Aluminum . . . [and] Concrete Masonry" which were to receive 1 to 2 coats of paint under the Specifications.

"A bidder who enters into a contract for construction work at too low a price, because of his antecedent mistake . . . in interpreting plans and specifications . . . If the other party did not cause the mistake and did not know of it, it is not just to force him to pay an amount that he did not promise to pay. To the facts that the contractor was negligent and the other party innocent . . . that calls for enforcement of the contract." 3 Corbin on Contracts, 646, 652, §

606; Restatement of the Law Second 48, Contracts 2d, § 21A; Id. 507, § 227 (2). Thus, where one contracting party to a written contract is negligently mistaken as to the subject matter of a contract in such a way as to justify the other party's reliance upon his stated assent to the written terms, the mistake is unilateral and the contract is enforceable. 13 Williston on Contracts 501, § 1577; Restatement of the Law Second 48, Contracts 2d, § 21A (2) (b).

If there was a mistake, it was of the unilateral type of the defendant's assignor in assuming there was no exterior painting of any type. The contract's clear and unequivocal specifications refute this assumption. Such unilateral mistake in construction of a written contract by one of the parties has no legal application unless the contract is ambiguous. 6 EGL 110, Contracts § 71; see also 13 Williston on Contracts 464, § 1570A; Id. 501, § 1577; 3 Corbin on Contracts 669, § 608; Restatement of the Law Second 48, Contracts § 21A (2) (b); Noland Co. v. Graver Tank & Mfg. Co., 301 F2d 43 (4th Cir. 1962). We have found there was no ambiguity. The facts were not in issue. Construction of the contract was for the court. *Hardy v. General Motors Accep. Corp.,* 38 Ga. App. 463, 464 (144 SE 327). As there was no issue for jury determination as to the validity of the contract, the trial court did not err in granting plaintiff's motion for partial summary judgment. See *Pisano v. Security Management Co.,* 148 Ga. App. 567, 570, supra; *Pippin v. Brigadier Indus.,* 150 Ga. App. 401 (2) (258 SE2d 18); *Kimsey Cotton Co. v. Ferguson,* 233 Ga. 962, 967 (214 SE2d 360); see generally 6 Moore's Federal Practice 56-778, ¶ 56.17 [11].

4. We find no error in the manner in which the trial court conducted the hearing on the motions for partial summary judgment. The record does not reflect that either side filed for a rule nisi. See *Herring v. Standard Guaranty Ins. Co.,* 238 Ga. 261, 262 (232 SE2d 544). Apparently the court held a joint hearing on both motions. Thus, although defendant filed the first motion it does not necessarily follow that he was entitled to argue first on his motion as the court " 'has a discretion in regulating and controlling the business of the court, and the appellate court should never interfere with the exercise of this discretion, unless it is plainly apparent that wrong has resulted from its abuse.' " *Clark v. Board of Dental Examiners,* 240 Ga. 289, 292 (240 SE2d 250). Furthermore, "[t]he trial court has discretion to control the order of proof." *Dubois v. Dubois,* 240 Ga. 314 (3) (240 SE2d 706). Both sides were permitted to present all their evidence and fully argue their respective positions. No prejudice or harm appears from the procedure followed. See 6 Moore's Federal Practice 56-341, ¶ 56.13; *Applegarth Supply Co. v. Schaffer,* 130 Ga. App. 353, 356 (203 SE2d 277); *Doe v. Sears,* 245 Ga. 83 (3) (263 SE2d

119).

5. The defendant contends the trial court "failed to search the entire record before granting" plaintiff's motion for partial summary judgment. He argues that "[d]ue to the harsh nature of the remedy involved, a trial judge should always search the entire record before granting a Motion for Summary Judgment. *Thompson v. Abbott,* 226 Ga. 353."

Our Supreme Court, in *General Mtrs. Corp. v. Walker,* 244 Ga. 191 (259 SE2d 449), stated that "[i]n *Thompson v. Abbott,* 226 Ga. 353 (1) . . . [t]he statement in that case that 'a trial judge should always search the entire record before granting a motion for summary judgment . . .' (226 Ga. at 355) was not necessary to the decision and is mere obiter." Id. at 191.

Defendant asserts the trial court should have examined all the documents which "includes not only a complete reading of the 3-page signed document [i.e. the contract], but also an examination of the plans and specifications, which are the real heart of the contract." However, we note in the record of trial a letter signed by counsel for defendant which states, in pertinent part: "Rather than include a full set of the plans which are referred to . . . by agreement of counsel we have simply included copies of pages A-4, A-5 and A-8 of the plans. Those are the only pages which are related to the issues and facts in this case. Likewise, rather than including a copy of a complete set of the specifications for this job . . . by agreement of counsel we have simply included copies of the cover sheets and the two sections of the specifications which have application hereto. A full set of the specifications is approximately 3 inches thick and the vast majority of information contained therein has no relevance to the matter at hand."

We agree with these statements of counsel. That is, we had no difficulty in deciding the issues presented by reference to the documents in the record. Likewise, these documents are the same as those used and referred to by counsel in their argument to the trial court. From a reading of the transcript, it is evident that the court also had the requisite documents brought to his attention by counsel which were necessary for his decision. We find this enumeration to be without merit.

6. The remaining arguments of defendant have been examined and found to be without merit.

*Judgment affirmed. Shulman and Carley, JJ., concur.*

ARGUED APRIL 10, 1980 — DECIDED JUNE 27, 1980 — REHEARING DENIED JULY 21, 1980 —

416

Ralph T. Bowden, Jr., Susan R. Bailey, for appellant.
Wiley S. Obenshain, III, for appellee.